IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CHRISTINE ZAVORKA                                                    PETITIONER

v.                          CIVIL NO.        3:09-CV-03021

SOCIAL SECURITY ADMINISTRATION
COMMISSIONER, Michael J. Astrue                                      RESPONDENT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.  **Procedural Background:**

The Plaintiff protectively filed an application for supplemental security income on February 28, 2005, alleging disability since February 15, 2005 due to chronic pulmonary disease (COPD), asthma, depression, and anxiety (Tr. 65, 113-114).  The claim was denied initially on April 12, 2005, and upon reconsideration on September 21, 2005. (Tr. 46-47, 51-55).  Thereafter, the plaintiff filed a timely written request for hearing on January 11, 2006.  An administrative hearing was held on April 26, 2007 and the plaintiff was present and represented by counsel.

The ALJ issued his opinion on February 14, 2008 that the plaintiff has not been under a

-1-

disability within the meaning of the Social Security Act since February 28, 2005, the date the application was filed. (Tr. 11).

The Plaintiff filed a timely appeal to the Social Security Appeals Council which denied the request for review on January 16, 2009. (Tr. 4-7). Plaintiff filed this current complaint (Doc. 1) on March 11, 2009. The Plaintiff filed her appeal brief (Doc. 7) on August 3, 2009 and the Defendant filed its appeal brief (Doc. 11) on September 2, 2009. The case is now ready for decision.

II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v.
Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).
The Act defines "physical or mental impairment" as "an impairment that results from anatomical,
physiological, or psychological abnormalities which are demonstrable by medically acceptable
clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff
must show that his disability, not simply his impairment, has lasted for at least twelve
consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

        The Commissioner's regulations require him to apply a five-step sequential evaluation
process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial
gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or
mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal
an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past
relevant work; and, (5) whether the claimant is able to perform other work in the national
economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).
Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and
work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683
F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## II.   <u>Factual Background</u>

        The ALJ found that the plaintiff had not engaged in substantial employment since filing,
and that she did have sever impairments but did not have an impairment or combination of
impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404,
Subpart P, Appendix 1 (20 CFR416.920(d), 416.925 and 416.926). (Tr. 13).

The Plaintiff, who was under 30 years of age, (Tr. 85) filed an initial claim for disability on June 16, 2003. (Tr. 87-89)  At the time of the initial claim she stated that she did not have any difficulty breathing (Tr. 88) but that her claim was based on panic attacks/depression. (Tr. 90). The Plaintiff stated that she missed a lot of work because of the panic attacks (Tr. 91) and that she was on Alprazolam[1] and Zoloft.[2] (Tr. 93).  She described her pain as "back pain, headaches, panicing (sic), nervousness & sleepyness (sic)". (Tr. 97).

The Plaintiff filed a second claim for disability on March 4, 2005 claiming an onset date of February 15, 2005. (Tr. 110-112).  In this application the plaintiff did state that she had problems breathing (Tr. 111) and that her claim was based on COPD/asthma/depression/anxiety. (Tr. 113).  In explaining why she has lost her last job she stated that "I would have panic attacks, my back hurt and I would have to quit".  (Tr. 114).

**Kerr Medical Clinic:**

The Kerr Medical Clinic is composed of Doctors Michael Hagaman, Lonnie Robinson and George Lawrence, among others.

Doctor Hagaman appears to be the principal doctor that treated the plaintiff during her last pregnancy and he first cautioned the plaintiff about her smoking on 05/14/2001. (Tr. 228). He was also the doctor that delivered her last child on 12/06/2001 which occurred without incident. (Tr. 204)

The Plaintiff was seen by Doctor Lawrence on 10/01/2002 and complained of "some back

---

[1]Alprazolam, (Xanax) is used for the management of anxiety disorder or the short term relief of the symptoms of anxiety and can also be indicated for the treatment of panic disorder.

[2]Zoloft is used for the treatment of a major depressive disorder.

pain" due to the lifting of her five year old child.  Medication, ice pack and exercises were prescribed. (Tr. 213).

The Plaintiff saw Dr. Hagaman on 01-21-2004 for left chest wall pain as a result of lifting wood.  The chest x-rays were within normal limits. (Tr. 260).  She was seen again on 04-30-2004 for depression and she complained about the Zoloft that she was on.  Dr. Hagaman switched her medication to Effexor[3] and suggested counseling for her and her husband. (Tr. 259).  Dr. Hagamns saw plaintiff again on 05/03/2004 for depression.  He prescribed Xanax (Alprozolam) and gave her the number of Ozark Family Ministries. (Tr. 258).  Plaintiff saw Dr. Hagaman again on  07/19/2004 complaining of back pain as a result of riding a jet ski for which he prescribed Soma 350 mg.  (Tr. 257).  The Plaintiff sees Dr. Hagaman again on 02/10/2005 and was concerned that her mother had cardiomyopathy and she wanted to get checked out for this.  She felt she had some palpitations during the evening.   The doctor's exam revealed that the HEENT is unremarkable; neck is supple; no JVD, no bruits; chest clear to auscultation without wheeze, rale or rhonchi; heart is RRR without murmur, rub or gallop.  The doctor told her that her biggest risks are smoking and her caffeine use. The Plaintiff's mother called back shortly after the exam and was "irate" and "[W]ants her further evaluated and wants her switched to Dr. Lawrence". (Tr. 254).

The Plaintiff admitted herself to the ER at Baxter Regional Medical Center on 02/10/2005 for an irregular heart rate/dizziness.  Dr. Hagaman was listed as the family physician. (Tr. 279).  X-rays were taken and showed no heart failure and no acute process in the chest. (Tr. 282). The discharge instruction provided NO SMOKING. (Tr. 281).

---

[3]Effexor is indicated for the treatment of depression.

**Tammy Hale-Tucker, D.O.:**

The Plaintiff was admitted back to Baxter Region Medical Center on 02/18/05 because of shortness of breath with exertion and her physician was listed as Tammy Hale-Tucker and the surgeon was listed as Clinton Cook. (Tr. 269).

The Plaintiff was subsequently diagnosed with COPD by Dr. Tucker on or about April 1, 2005. (Tr. 364) She was told to stop smoking and given a hand out. (Tr. 365).

The Plaintiff saw Doctor Tucker on 05/12/2005 and complained of back/abdominal pain with pelvic inflammatory disease.  At this visit the Plaintiff complained of fever, weight loss, anorexia, chills, fat intolerance, fatigue, lethargy, malaise, weakness generalized, hot flashes bleeding, allergies, jaw pain and jaw tremor, post nasal drainage, vision impairment, neck limited motion, neck pain, coughing, wheezing, chronic obstructive pulmonary disease, murmur, palpitations, abdomen pain, constipation, flatulence, suprapubic pain, urethral discharge, urine urgency, arthralgia, back pain, joint stiffness, joint swelling, knee pain, leg pain, muscle cramps, muscle twitching, myalgia, varicose veins, bruising, pruitus, actinic damage, cephalgia, clumsiness, confusion, disorientation, incoordination, paresthesias, seizures, speech impairment tremor, vertigo, hallucinations, insomnia, agitation, anxiety, apathy, apprehension, depression, irritability, and suicidal ideation.

Dr. Tucker diagnosed the plaintiff with Chronic Obstructive Pulmonary Disease; Worsening Pain low back; Pelvic inflammatory disease; joint pain; worsening Insomnia; Worsening Tremor not otherwise specified; Anxiety syndrome; depression and tobacco dependency. (Tr. 289-290).

The Plaintiff was seen again by Dr. Tucker on 05/19/2005 because she had run out of her

medications and Dr. Tucker did refill the tylox until the plaintiff could see Dr. Cook.

The Plaintiff was admitted back to Baxter Regional Medical Center on 05/27/2005 for a tubal ligation and fractional D&C which was performed by Dr. Cook without complications. (Tr. 262A).

The Plaintiff was seen by Dr. Tucker on 06/28/2005 for a minor non relevant medical problem.  The doctor noted that the plaintiff did have a chronic cough and chronic obstructive pulmonary disease and tobacco abuse.  The doctor also noted that her back pain had resolved. The Plaintiff was counseled to stop smoking. (Tr. 286).

Plaintiff seen by Dr. Tucker on 09/23/2005 because of a chronic cough and because the Wellbutrin seemed to make her anxious and maybe even suicidal.  The Plaintiff was diagnosed with COPD, Anxiety syndrome, cough, and Tobacco Dependence. (Tr. 357-358).

Plaintiff was seen by Dr. Tucker on 10/20/2005 for coughing and Dr. Tucker diagnosed the Plaintiff with Musculoskeletal Cramp, Pelvic Pain, anxiety syndrome, Bipolar affective disorder (manic - depressive).  She prescribed seroquel samples. (Tr. 356-357) (Tr. 350).

On 02/16/2006 the Plaintiff saw Dr. Tucker and complained that both eyes had been twitching every day for the last 6 months and anxiety. (Tr. 348).  Dr. Tucker diagnosed Blepharospasm and Anxiety syndrome (tense or nervous). (Tr. 349).

Plaintiff saw Dr. Tucker again on 02/21/2006 to discuss her COPD (Tr. 347) and again on 04/14/2006 when her chief complaint was upper respiratory infection. (Tr. 347).

On 05/18/2006 the Plaintiff complained to Dr. Tucker about back pain where the onset was gradual and the duration was continuos.  Dr. Tucker's diagnosis was low back pain and myalgias (muscle pain) and she told the plaintiff to avoid caffeine and plan for regular physical

activity and gave her a back care handout. An MRI was discussed.   (Tr. 346).

Dr. Tucker order an MRI which was performed on 5-22-06 by Doctor Matthew Wilson. Dr. Wilson stated that the Lumbar Spine was unremarkable. He stated that in  the Thoracic Spine "[T]here is a minimal posterior disk bulge at T9-T10.  This causes a minimal impression on the thecal sac but no significant spinal or foraminal stenosis.  The other disk levels throughout the thoratic spine are unremarkable.  There is no apparent fracture, subluxation, or destructive lesion. The thoratic spinal cord is unremarkable." (Tr. 325-326).

On 05/23/2006 the Plaintiff saw Dr. Tucker and discussed the MRI results and a trigger point injection was administered at the T9 disk and tylenol #3 was prescribed for pain. (Tr. 344-345).

On November 30, 2006 the Plaintiff was seen by Dr. Tucker and the chief complaint was that her heart was skipping a beat and pumping extra hard. The Plaintiff specifically denied that she had any back pain, muscle cramps or myalgia.  She also denied any memory loss or disorientation. She was diagnosed with chest pain, Angina Pectoris Stable, and Dyspnea and Dr. Tucker wanted to refer her to a Cardiologist. (Tr. 342-343) Later on the same day Dr. Tucker made an assessment of Palpitations, Anxiety syndrom (tense or nervous) and Vertigo. (Tr. 341).

On 12/12/2006 the Plaintiff was seen by Dr. Tucker and her chief complaint was depression with symptoms of back pain among others.  The doctor noted that she was doing ok on pain and that she was at a level of 8/10 without medications and 2/3 with her medications. (Tr. 339).

**Dr. M. Carl Covey:**

Plaintiff saw Dr. Covey on 03/16/2007 for pain in her shoulder blades and down her back,

but she stated that medication helped her discomfort (Tr. 15, 368). Plaintiff told Dr. Covey that

she had smoked for 5 to 10 years, and was smoking less than a pack a day at the time of her visit

(Tr. 369). She denied memory loss, confusion, nervousness, depression, or insomnia (Tr. 15,

369).

Although Dr. Covey's examination revealed mild interspinous pain at T9/10, it also

revealed normal findings, such as a full range of motion in Plaintiff's cervical spine without pain;

intact and symmetric deep tendon reflexes, normal motor and sensory function; negative Tinel

and Phalen maneuvers; and negative straight-leg-raise testing. (Tr. 15, 370-71).  Dr. Covey

diagnosed thoracic radiculitis and prescribed pain medications. (Tr. 371).  In May 2007, Dr.

Covey performed the first in a series of three planned thoracic epidural steroid injections (Tr.

15-16, 371, 380-81).

**RFC Evaluation:**

Dr. Tucker completed a physical residual function capacity questionnaire on 04/24/2007

in which she opined that the plaintiff suffered from depression and anxiety and that the plaintiff

could only sit for 30 minutes before having to get up and stand for only 15 minutes before having

to sit down.  (Tr. 374) The doctor went on to say that the plaintiff could never lift 20 or 50

pounds and could rarely lift 10 pounds and occasionally less than 10 pounds. (Tr. 375) Dr.

Tucker produced an Addendum to the RFC where she stated that the Plaintiff has "serious

physical.  It is my opinion that Christina clearly believes she has chronic and severe back pain in

addition to her shortness of breath and she is limited accordingly.  I believe there is a significant

psychological component to her physical limitations."

Doctor Tucker further states that she believes that the plaintiff has Somatoform Disorder

and states that while the plaintiff has objective findings indicating impairments in both her thoracic spine and lungs, "she has an unrealistic impression of her physical signs and a sincere belief that she has a serious disease.  Finally, she suffers from marked restrictions of her activities of daily living, marked difficulties in maintaining social functioning and repeated episodes of deompensation each of extended durations".  (Tr. 378)

**Dr. Ted Honghiran:**

Dr. Ted Honghiran, an orthopedic specialist, performed an examination of the Plaintiff on June 27, 2007. Dr. Honghiran's impression was that the Plaintiff had chronic low back pain, most likely from chronic lubrosacral strain in nature, with evidence of a bulging disc on the MRI scan at all thoratic spine levels with no evidence of muscle atrophy or neurological deficit noted. (Tr. 382-383).

Dr. Honghiran opined that the Plaintiff could lift up to 20 pounds frequently, 50 pounds occasionally but never more than 50 pounds. (Tr. 385).

He also found that she could sit for up to 4 hours and stand and walk up to one hour without interruption, and that she could sit for six hours, stand for three hours and walk for up to two hours in an eight hour work day. (Tr. 386).

He also found that she could frequently use her right and left hand and right and left foot (Tr. 387) and that she could frequently climb, balance, stoop, kneel, crouch and crawl. (Tr. 388).

**Dr. Robert Hudson:**

The Plaintiff was seen by Dr. Robert Hudson, a clinical psychologists on July 22, 2003. Dr. Hudson performed a Mental Residual Functional Capacity Assessment and found the plaintiff not significantly limited. (Tr. 234-235).  Dr. Hudson found that the plaintiff did have

-10-

Affective Disorders and Anxiety-Related Disorders but specifically did not fined the existence of Somatoform Disorders. (Tr. 238).

**Dr. Kathryn Gale:**

The Plaintiff was seen by Dr. Gayle, a M.D. on 04/11/2005 who determined that the plaintiff had impairments but they were not severe and that she had Anxiety-Related Disorders. The Dr. specifically found that the Plaintiff did not have Somatoform Disorder. (Tr. 301)  The doctor further found that her Restrictions in Daily Living, Difficulties in Maintaining Social Function and Difficulties in Maintaining Concentration, Persistence, or Pace were mildly limited and that she had no repeated Episodes on Decompensation, of extended duration. (Tr. 311). Theses findings were reviewed by Dr. Brad Williams, a psychologist, and affirmed. (Tr. 301).

**W. Charles Nichols, Psy.D.:**

The Plaintiff was seen by W. Charles Nichols, a clinical psychologist, on September 21, 2007.  Mr. Nichols diagnosed the plaintiff with social phobia and generalized anxiety disorder on Axis I, and a GAF of 66 on Axis V. (Tr. 395).  Mr. Nichols also determined that the plaintiff had no restrictions on her ability to make judgments on simple work-related decisions and to carry out simple instructions and that she had mild limitations on understanding and remembering simple instructions, carrying out complex instructions, and the ability to make judgments on complex work-related decisions. (Tr. 397)  Mr. Nichols also determined that the plaintiffs was moderately to mildly impaired in her ability to interact appropriately with supervisors, co-workers and the public. (Tr. 398).

**III. Discussion:**

The Plaintiff contends that the ALJ committed error as follows: (1) that there is not

substantial evidence from the record as a whole to support the ALJ's decision that Plaintiff is not disabled and has the residual functional capacity identified, (2) that the ALJ's findings regarding the credibility of Plaintiff's pain and other limitations is based on substantial evidence, and (3) the ALJ erred when he discredited Plaintiff's treating physician's opinion regarding Plaintiff's physical and mental limitations. (Doc. 7, p.1).

**1.  Whether there is substantial evidence from the record as a whole to support the ALJ's decision that Plaintiff is not disabled and has the RFC identified.**

The Plaintiff filed a second claim for disability on March 4, 2005 claiming an onset date of February 15, 2005. (Tr. 110-112).  In this application the plaintiff stated that she had problems breathing (Tr. 111) and that her claim was based on COPD/asthma/depression/anxiety. (Tr. 113). In explaining why she has lost her last job she stated that "I would have panic attacks, my back hurt and I would have to quit".  (Tr. 114)   In the Plaintiff's first claim for disability filed June 16, 2003 she stated that she did not have any difficulty breathing. (Tr. 88).

*COPD:*

The Plaintiff admitted that she started smoking at 16 and usually smoked two packs per day.  At the time of the *hearing* she asserted that she had reduced her consumption to ten to 12 cigarettes per day. (Tr. 414-415).

The Plaintiff was first cautioned about smoking by Dr. Hagaman during her pregnancy on May 14, 2001. (Tr. 228).  It was again noted by Dr. Hagaman that she continued to smoke through her pregnancy despite warnings. (Tr. 206). The Plaintiff admitted herself to the ER at Baxter Regional Medical Center on 02/10/2005 for an irregular heart rate/dizziness.  Dr. Hagaman was listed as the family physician. (Tr. 279).  X-rays were taken and showed no heart

failure and no acute process in the chest. (Tr. 282) The discharge instruction provided NO

SMOKING. (Tr. 281) Dr. Tucker told the Plaintiff to stop smoking, provided a handout, and

placed her on Wellbutrin on April 1, 2005. (Tr. 364). The Plaintiff was again counseled to stop

smoking on June 28, 2005 by Dr. Tucker and that they would try flax seed oil. (Tr. 359).

    In addition to the results of objective medical tests, an ALJ may properly consider the

claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d

1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins*, 177 F.3d

at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit

smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997). *Choate v. Barnhart*  457 F.3d

865, 872 (C.A.8 (Mo.),2006).

Back Pain:

    While the Plaintiff did not list back pain as a basis for her disability in her application it

has a persistant history in her medical records.  The fact that the plaintiff did not allege back pain

as a basis for her disability in her application for disability benefits is significant, even if the

evidence of back pain was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th

Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

    Plaintiff first asserted back pain on October 1, 2002 as a result of "doing a lot of lifting,

particularly her child who is 5 YO." (Tr. 213).  That back issue appeared to resolve itself and was

not mentioned again in the medical records.

    The Plaintiff next asserted back pain on July 19, 2004 as a result of riding a jet ski for

which Soma 350 mg[4] was prescribed. (Tr. 257). This pain resolved and was not mentioned at the next doctor's visit on August 31, 2004. (Tr. 256).

The Plaintiff next complained of back pain to Dr. Tucker on May 12, 2005 along with a host of other symptoms. (Tr. 289).  Dr. Tucker saw the Plaintiff again on June 28, 2005 and indicated that the back pain issue had been resolved. (Tr. 286).

On May 18, 2006 the Plaintiff again complains of back pain to Dr. Tucker (Tr. 346). Dr. Tucker order an MRI which was performed on 5-22-06 by Doctor Matthew Wilson.  Dr. Wilson stated that the Lumbar Spine was unremarkable. He stated that in  the Thoracic Spine "[T]here is a minimal posterior disk bulge at T9-T10.  This causes a minimal impression on the thecal sac but no significant spinal or foraminal stenosis.  The other disk levels throughout the thoratic spine are unremarkable.  There is no apparent fracture, subluxation, or destructive lesion. The thoratic spinal cord is unremarkable." (Tr. 325-326).

On 05/23/2006 the Plaintiff saw Dr. Tucker and discussed the MRI results and a trigger point injection was administered at the T9 disk and tylenol #3 was prescribed for pain. (Tr. 344-345).   Dr. Tucker acknowledged that the Plaintiff's original back complaint had resolved  and that her subsequent complaints of back pain were managed with medication. (Tr. 15, 339).

The Plaintiff acknowledged, in an interview with Charles Nichols, that she suffers from more pain "than what my MRI says I should be." (Tr. 392).  Dr. Ted Honghiran performed an Orthopedic evaluation of the Plaintiff on June 18, 2007 and determined that she was able to dress and undress with no problems and that the range of motion of her lumbar spine is complete, with

---

[4]Soma is indicated as an adjunct to rest, physical therapy, and other measures for the relief of discomfort associated with acute, painful musculoskeletal conditions.

negative straight leg raising on both sides and that her prognosis is fair but that she would continue to have pain in her back area, but no evidence of muscle atrophy or neurological deficit. (Tr. 382-383). Dr. Honghiran felt that the Plaintiff could lift and carry up to 20 pounds frequently, 50 pounds occasionally but never anything greater than 100 pounds. (Tr. 385). He also determined that she could sit up to 4 hours, stand up to one hour and walk up to one hour and that during a work day she could sit up to 6 hours, stand up to 3 hours and walk up to 2 hours. (Tr. 386). He also determined that she could frequently reach, handle, finger, feel and push/pull with her left and right hand and that she could operate foot controls with both feet. (Tr. 387).

When Dr. Tucker completed her RFC assessment in April 2007 she stated that "[I]t is my opinion that Christina clearly believes she has chronic and severe back pain in addition to her shortness of breath and she is limited accordingly. I believe there is a significant psychological component to her physical limitations."

It is clear that the Plaintiff does not have physiological explanation for the back pain which she complains of and would only be entitled to disability if the physical symptoms were enhanced by a mental impairment.

Mental Impairment

The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased. *Id*. Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the

impending possibility of relapse." *Id.* Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy,* 683 F.2d at 1147.

Dr. Tucker stated that Plaintiff experienced chronic back pain with degenerative joint disease; that Plaintiff's depression and anxiety affected her physical condition; that during a typical workday, Plaintiff would frequently experience pain or other symptoms that were severe enough to interfere with the attention and concentration needed to perform even simple work tasks; and that Plaintiff was incapable of even "low stress" jobs. (Tr. 16, 373-74). Dr. Tucker limited Plaintiff to less than 2 hours of sitting, standing, and walking in an 8-hour workday (Tr. 375). Dr. Tucker opined that Plaintiff could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift 20 pounds or more (Tr. 3750. She also stated that Plaintiff could occasionally look down, turn her head left or right, look up, and hold her head in a static position (Tr. 16, 276). Finally, Dr. Tucker opined that Plaintiff could occasionally twist, stoop, crouch, squat, climb ladders, and climb stairs (Tr. 16, 376).

In an addendum to her assessment form, Dr. Tucker opined that Plaintiff clearly believed she had chronic and severe back pain in addition to her shortness of breath and that Plaintiff was "limited accordingly" (Tr. 16, 378). Dr. Tucker stated that she had reviewed Listing 12.07 titled

"Somatoform Disorder," and she believed that Plaintiff's impairments met or equaled this listing (Tr. 16, 378). According to Dr. Tucker, Plaintiff had a history of multiple physical symptoms of several years duration, all of which began prior to age 30 that caused her to take medicine frequently, see a physician often, and alter life patterns significantly (Tr. 378). In addition, Dr. Tucker stated that Plaintiff had an unrealistic impression of her physical signs and a sincere belief that she had a serious disease (Tr. 16, 378). Dr. Tucker also opined that Plaintiff suffered from marked restrictions of her activities of daily living, marked difficulties in maintaining social functioning, and repeated episodes of decompensation, each of extended duration (Tr. 378).

"Somatoform" denotes "psychogenic symptoms resembling those of physical disease." *The Sloane-Dorland Annotated Medical-Legal Dictionary* 479 (Supp.1992); *see Roe v. Chater*, 92 F.3d 672, 676 n. 5 (8th Cir.1996) ("Somatoform disorder is a condition characterized by physical symptoms that suggest a general medical condition and are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder."). *Gowell v. Apfel,* 242 F.3d 793, 795 (C.A.8 (Ark.),2001)

The required level of severity for Somatoform Disorder is met when the requirements in both A and B are satisfied.

A. Medically documented by evidence of one of the following:

1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or

2. Persistent nonorganic disturbance of one of the following:

a. Vision; or

b. Speech; or

-17-

       c. Hearing; or

       d. Use of a limb; or

       e. Movement and its control (e.g., coordination disturbance, psychogenic

       seizures, akinesia, dyskinesia; or

       f. Sensation (e.g., diminished or heightened).

    3. Unrealistic interpretation of physical signs or sensations associated with the

    preoccupation or belief that one has a serious disease or injury;   and

B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration See C.F.R. Pt.

    404, Subpt. P, App. 1, § 12.07.

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). The court will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted).

The ALJ discussed Dr. Tucker's medical records covering April 2005 through December 2006 (Tr. 15, 285-98, 335-66). In April 2005, Plaintiff received treatment for intermittent wheezing, which worsened after she smoked tobacco (Tr. 15, 294). Dr. Tucker recommended that Plaintiff stop smoking (Tr. 15, 294). Dr. Tucker treated Plaintiff for complaints of back pain

in May 2005 (Tr. 288-92); however, by June 28, 2005, Plaintiff's back pain had resolved, and

Dr. Tucker again counseled Plaintiff on smoking cessation (Tr. 15, 286-87). In September 2005,

Plaintiff reported a worsening cough, wheezing, and bronchitis because she had started smoking

"a lot" again due to anxiety (Tr. 15, 350-51). Dr. Tucker decreased Plaintiff's dosage of

Wellbutrin and prescribed Clonazepam for anxiety (Tr. 15, 350-51). The results of a thoracic

spine magnetic resonance imaging scan (MRI) on May 22, 2006, showed only a minimal

posterior disk bulge at T9 without stenosis, and a lumbar spine MRI was normal (Tr. 15, 325-26,

337-38). A day later, Plaintiff received a trigger point injection for displacement of

intervertebral disk at T9 (Tr. 15, 345). In November 2006, Plaintiff complained of her heart

skipping a beat and pumping extra hard, but the results of a Holter monitor showed no

significant conduction abnormalities. It is also significant that on November 30, 2006 she

reported that she was not having any back pain.(Tr. 15, 340-41). Finally, in December 2006,

Plaintiff reported worsening depression, but she also reported that she was "doing ok" with her

back pain and rated her pain with medication as 2-3 on a 1 to 10 scale (Tr. 15, 339). Dr. Tucker

stated she would prescribe pain medications, but she required Plaintiff to sign a "pain contract"

(Tr. 15, 340). Dr. Tucker also diagnosed COPD and nicotine addiction (Tr. 340).

     The ALJ also described a March 2007 medical record from M. Carl Covey, M.D. (Tr. 15,

368-71). Plaintiff saw Dr. Covey for pain in her shoulder blades and down her back, but she

stated that medication helped her discomfort (Tr. 15, 368). Plaintiff told Dr. Covey that she had

smoked for 5 to 10 years, and was smoking less than a pack a day at the time of her visit (Tr.

369). She denied memory loss, confusion, nervousness, depression, or insomnia (Tr. 15, 369).

Although Dr. Covey's examination revealed mild interspinous pain at T9/10, it also revealed

normal findings, such as a full range of motion in Plaintiff's cervical spine without pain; intact and symmetric deep tendon reflexes, normal motor and sensory function; negative Tinel and Phalen maneuvers; and negative straight-leg-raise testing (Tr. 15, 370-71). Dr. Covey diagnosed thoracic radiculitis and prescribed pain medications (Tr. 371). In May 2007, Dr. Covey performed the first in a series of three planned thoracic epidural steroid injections (Tr. 15-16, 371, 380-81).

Next, the ALJ discussed the orthopedic consultative evaluation that Dr. Honghiran performed in June 2007 (Tr. 16, 382-84). After a generally normal examination, Dr. Honghiran diagnosed chronic low back pain, most likely from chronic lumbosacral strain in nature, with evidence of a bulging disc on the MRI scan at all thoracic spine levels (Tr. 16, 382-84). Dr. Honghiran opined that although Plaintiff would continue to have back pain, she had no evidence of muscle atrophy or neurological deficit (Tr. 16, 383). He completed an assessment form, stating that Plaintiff could frequently lift or carry up to 20 pounds frequently and up to 50 pounds occasionally; sit for 6 hours (4 hours continuously) in an 8-hour workday; stand 3 hours total in an 8-hour workday; and walk 2 hours in an 8-hour workday (1 hour without interruption) (Tr. 16, 385-86). In addition, Dr. Honghiran opined that Plaintiff could frequently reach, handle, finger, feel, push/pull, climb, balance, stoop, kneel, crouch, and crawl (Tr. 387-88). But he limited her to only occasional exposure to unprotected heights, moving machinery, operating a motor vehicle, humidity, dust, odors, fumes, temperature extremes, and vibrations (Tr. 389).

After a review of the available medical records and interviewing Plaintiff, Dr. Nichols diagnosed Plaintiff with social phobia and generalized anxiety disorder with a Global

Assessment of Functioning (GAF) score of 66 (Tr. 16, 395)[5]. He stated that Somatoform Disorder NOS should be provisionally diagnosed based on symptoms that seem similar to both a pain disorder and/or possible hypochondriasis and that additional medical documentation and input would be needed to confirm such a diagnosis (Tr. 16, 395).  It seems clear that Dr. Nichols is stating that there is insufficient evidence in the file to justify a diagnosis of somatoform disorder.  It should also be note that Dr. Tucker never diagnosed the plaintiff with somatoform disorder during the time that she treated her. The court also notes that the original consulting psychologist, Dr. Hudson did not diagnosis the plaintiff with somatoform disorder in 2003 (Tr. 230-251) nor did Dr. Gale or Williams make such a diagnosis in 2005. (Tr. 301-314).

Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart*  393 F.3d 798, 803 (C.A.8 (Mo.),2005).

In this case none of the three mental health specialist to have seen the Plaintiff have diagnosis Somatoform Disease. Dr. Robert Hudson, who did a Mental Residual Functional Capacity Assessment on July 22, 2003 found that the Plaintiff was not significantly limited. (Tr. 234-235).  Likewise, Dr. Gale, on April 11, 2005, found that the Plaintiff's Restrictions in Daily Living, Difficulties in Maintaining Social Function and Difficulties in Maintaining Concentration, Persistence, or Pace were mildly limited.  (Tr. 311).   None of the Plaintiff's treating physicians, including Dr. Tucker,  have diagnosed Somatoform disease until Dr. Tucker filed an undated addendum to her RFC assessment which was made on or about April 24, 2007.

---

[5] A GAF score of 61-70 generally denotes some mild symptoms or some difficulty in social, occupational, or school functioning. See American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed., Text Rev. 2000).

RFC Function:

RFC is the most a person can do despite that person's limitations.  20 C.F.R. §
404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See
Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004).  "The ALJ determines a claimant's
RFC based on all relevant evidence in the record, including medical records, observations of
treating physicians and others, and the claimant's own descriptions of his or her limitations."
*Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  This includes medical records,
observations of treating physicians and others, and the claimant's own descriptions of her
limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting
from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).
The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual
functional capacity is a medical question."  *Lauer v. Apfel,*  245 F.3d 700, 704 (8th Cir. 2001).
Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical
evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,*
353 F.3d 642, 646 (8th Cir. 2003).  "Under this step, the ALJ is required to set forth specifically
a claimant's limitations and to determine how those limitations affect her RFC."  *Id*.

On November 14, 2007, the ALJ sent interrogatories to Ed Massey, Jr., a vocational
expert (VE) (Tr. 196).  The ALJ posed a hypothetical question to the VE based upon the
limitations set forth by Dr. Honghiran and a second hypothetical based upon the limitations set
forth by Dr. Tucker.

In response to the ALJ's first hypothetical question, the VE opined that the hypothetical
individual could perform the jobs of telephone quotation clerk, parimutuel ticket checker, and

-22-

cashier (Tr. 199). In response to the ALJ's second hypothetical question, the VE opined that there would be no jobs in the national or regional economy that the hypothetical individual could perform (Tr. 200).

In finding plaintiff able to perform a significant range of light work, the ALJ considered plaintiff's subjective complaints, the medical records of her treating physicians, and the evaluations of a consultative.  Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's examining physicians placed no restrictions on her activities during the relevant time period that would preclude a significant range of light work. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on all of the evidence contained in the file, we find substantial evidence supporting the ALJ's RFC determination

Finally, the court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude her from performing other work as an telephone quotation clerk, parimutuel ticket checker, and cashier.  *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

Accordingly the court finds that there is substantial evidence from the record as a whole to support the ALJ's decision that Plaintiff is not disabled and has the RFC identified.

**2.  Whether the ALJ's findings regarding the credibility of Plaintiff's pain and other**

**limitations was based on substantial evidence.**

In evaluating a claimant's subjective reports of pain, the ALJ should make a credibility determination taking into account: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of the pain; 3) the dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir.2000). The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

The court will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain, even in cases involving somatoform disorder. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir.1993); *Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir.1995). *Gowell v. Apfel,* 242 F.3d 793, 796 (C.A.8 (Ark.),2001).

The Plaintiff first claimed that she was disabled due to chronic pulmonary disease (COPD), asthma, depression, and anxiety. (Tr. 65, 113-114). The Plaintiff was repeatedly ordered to stop smoking over many years, (Tr. 288, 281, 364, 359) but refused to do so. An ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins*, 177 F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997). *Choate v. Barnhart* 457 F.3d 865, 872 (C.A.8 (Mo.),2006).

The fact that the plaintiff did not allege back pain as a basis for her disability in her

-24-

application for disability benefits is significant, even if the evidence of back pain was later

developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F.

3d 1033, 1039 (8th Cir. 2001).

All of Plaintiff's complaints of back pain, as the ALJ pointed out, subsequently resolved

except for the last complaint which was made on May 18, 2006 where she asserted that the onset

was gradual and the duration was continuous. Dr. Tucker told the Plaintiff to avoid caffeine and

plan for regular physical activity and a back care book was handed out. (Tr. 346).  When an MRI

was performed on May 22, 2006 a minimal disk bulge was observed at T9-T10 (Tr. 325-326) and

when Dr. Tucker saw the Plaintiff on May 23, 2006 she prescribed tylenol #3. (Tr. 344-345).

When Dr. Tucker saw the Plaintiff on November 30, 2006 she denied any back pain. (Tr. 341).

The ALJ noted that the alleged limitations of daily activity were not objectively verified

with any reasonable degree of certainty. (Tr. 19).  The claimant and her husband were the only

ones to testify at the hearing.

No medical evidence, outside of Dr. Tucker,  provided any support for the nature and

extent of the plaintiff's debilitating claims, and the ALJ discounted the conclusions of Dr. Tucker

as discussed below.

In evaluating Plaintiff's mental impairments, the ALJ observed that Plaintiff had a history

of referrals for marital counseling and prescriptions for anxiety, depression, and marital

problems (Tr. 18, 254, 258, 259, 290-91, 286, 349, 351). The ALJ reasoned that although Dr.

Tucker opined that Plaintiff had somatoform disorder, Dr. Nichols concluded that there was no

collateral evidence to support such a diagnosis (Tr. 18, 378, 395). Before Dr. Tucker's April

2007 statement that Plaintiff had somatoform disorder (Tr. 378), none of Plaintiff's treating

-25-

physicians, including Dr. Tucker, had diagnosed her with such an impairment (Tr. 254, 258, 259, 290-91, 286, 349, 351). The ALJ also noted Dr. Nichols's conclusions that Plaintiff's social skills were hampered by socially related anxiety, but that her mental impairment had only a minimal impact on her activities of daily living (Tr. 18, 396). Dr. Nichols added that Plaintiff had no difficulty with concentration, persistence, or pace (Tr. 18, 396). Dr. Nichols completed an assessment of Plaintiff's mental limitations, which showed only mild to moderate limitations (Tr. 18, 397-99).

Moreover, as the ALJ noted in his decision, the mere inability to work without some degree of pain or discomfort, of a minimal to mild nature, does not necessarily constitute a "disability" for Social Security purposes (Tr. 18). The Eighth Circuit has held that when evaluating a claimant's pain complaints, the question is not whether the claimant suffers any pain; it is whether she is fully credible when she claims that the pain is so great that it prevents her from performing any kind of work. *See Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001); *Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996).

**3.   Whether the ALJ erred when he discredited Plaintiff's treating physician's opinion regarding Plaintiff's physical and mental limitations as they relate to her RFC.**

The ALJ properly discounted the limitations in Dr. Tucker's assessment because they were inconsistent with the record as a whole. (Tr. 19). In addition, the ALJ properly reasoned that Dr. Tucker's opinions about Plaintiff's mental limitations were outside the doctor's area of expertise (Tr. 19). Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005).

In this case none of the four specialist to have seen the Plaintiff have diagnosis Somatoform Disease.  None of the Plaintiff's treating physicians have diagnosed Somatoform disease until Dr. Tucker filed an undated addendum to her RFC assessment which was made on or about April 24, 2007.

An ALJ should give controlling weight to a treating physician's opinion about a claimant's limitations only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record" (Tr. 19). *See Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008).

Dr. Tucker's opinion was not "well supported."   A May 2006 MRI of Plaintiff's thoracic spine showed only minimal posterior disk bulge at T9 without stenosis, and an MRI of her lumbar spine was normal (Tr. 15, 325-26, 337-38). In addition, Dr. Covey's examination revealed only mild interspinous pain atT9/10, with otherwise normal findings (Tr. 15, 370-71). Finally, contrary to Plaintiff's arguments, Dr. Honghiran completed an assessment of Plaintiff's ability to perform work-related activities, which contradicted the limitations in Dr. Tucker's assessment form (Tr. 373-77, 385-90). The ALJ incorporated Dr. Honghiran's opinions about Plaintiff's limitations into his RFC determination (Tr. 13-14, 385-90).  Notwithstanding the great weight of medical evidence Dr. Tucker diagnosed the Plaintiff with degenerative joint disease in her RFC evaluation on April 24, 2007. (Tr. 373).

## IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be

-27-

dismissed with prejudice.

IT IS SO ORDERED this October 23, 2009.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES DISTRICT JUDGE